Case No. 25-1758, Kirk Beachner Appellant v. Howard University and Adventist Healthcare, Inc. Mr. Branch for the appellant, Mr. Gulling for the appellees. Good morning, counsel. Mr. Branch, please proceed when you're ready. Yes, good morning. May I please support David Branch? I represent the appellant, Kirk Beachner. This is an appeal from the District Court's grant of summary judgment on an FMLA claim under the D.C. FMLA, as well as the federal FMLA, and under the D.C. Human Rights Act, as well as Title VII, and dismissal of claims of sex discrimination in a hostile work environment. The District Court resolved factual disputes in resolving the FMLA retaliation claim, and I'll begin there. As the record is clear, Mr. Beachner requested FMLA leave in November 2021. He made plans to return on March 1st, 2022. He was not allowed to return. He was terminated on March 18th, and at the time of his termination, he was employed as a cath manager at Howard University Hospital. At the time of his termination, there was no director in place, there was no manager in place. And the justification that was offered by Howard University was that his position was being eliminated, and his job was, there was restructuring, and his job was being eliminated. But at the time of his termination, there was no manager or director in place. The District Court, as I noted, resolved disputes that should have been resolved by the jury. There were open questions concerning the actual timing of the termination. The timing alone suggests that it was retaliation. There were no contemporaneous, there were at least four reasons here, there were no contemporaneous records of any plans to eliminate or terminate his position. As I noted, there was no director or manager in place at the time of his termination, so when he was terminated, he actually left Howard University without a manager or a director of the lab. For a period of at least 15 years, this lab had been managed by someone who did not have a nurse license or an RN license. So the District Court effectively placed itself in the jury box and decided issues that should have been decided by a jury. In fact, the District Court held that it's not unusual or may not be unusual in hiring decisions or firing decisions to keep contemporaneous records. But here, there aren't any records at all until January 2022. In fact, when the consultant had discussions with the responsible management official, I think in September of 2021, there was no discussion whatsoever about eliminating the manager position occupied by Mr. Buechner. And in fact, the consultant was surprised when Mr. Buechner notified the consultant that his position had been eliminated. So a jury hearing all of the facts could easily conclude that there were issues with how this termination decision was made. The fact that there weren't any records of any plans to eliminate Mr. Buechner's position and at the time that Mr. Buechner's position was eliminated, this left the lab without a manager or without a director. And the same analysis applies to the retaliation claim under Title VII. Mr. Buechner, over the period of his employment, filed a number of EEO complaints internally at Howard University against his manager alleging discrimination. Of course, he's a white male supervised by African-American women and most of the decisions here were made by African-American women. He filed an EEO complaint in December 2021 and his termination followed just three months after his EEO complaint. So once again, all of this raises an inference or at least raises the possibility that a jury could conclude that this was not related to a decision to restructure the department or to eliminate the staff manager position but was because Mr. Buechner engaged in EEO activities. So he filed a complaint in November. He decides to, he announces he's returning to work March 1st. There were no plans at the time to, were no plans communicated to him at the time that he was going to be terminated. Can I ask you about the FMLA retaliation claim? How do you, you cited WAGLE, I'm not sure if I'm pronouncing it correctly, W-A-G-T-E-L-V, George Washington University, in support of that claim. But my reading of that case, we rejected the claim because temporal proximity was not enough by itself, that there was no positive evidence beyond the mere temporal proximity. And there was a single comment that the plaintiff had taken too much sick leave, but we said essentially those two things together weren't enough to raise a genuine issue of material fact. So what's your response to that case? Am I taking the wrong thing from that case or is there better authority? What's your best? Our argument is there's so much more in this case. Yes, there's a question of temporal proximity, but all the points that I, all the issues that I just pointed out, there were no plans to eliminate the manager's position. In fact, when the consultant reviewed or made the recommendations, I think in September of 2021, there was no discussion whatsoever about eliminating the manager's position. In fact, the consultant suggested that Mr. Buechner would work with this new person. The problem was Mr. Buechner's supervisor at that time. So we have so much more in this record than just the proximity we have. But the evidence was very consistent that they believe that someone with a nursing degree needed to be heading this lab, right? Whether it was going to be a manager or a director, but that whoever was at the top of the pyramid, so to speak, for this department needed to have a degree. That part, there isn't really any dispute about. Yes, there's no dispute there. They did change the position, this requirement, so that Mr. Buechner could be hired in the position. But for a number of years, they operated this lab without someone with an RN certification. But the RNs who were working this lab actually reported to someone who was an RN. So yes, I agree, if they wanted to make that decision, that's fine. But there was never any discussion of eliminating Mr. Buechner's position or changing the requirements for his position description so that it required that the person who occupied the position as the nurse manager to have an RN certification. But we have all the other issues with how this decision is made. It's not until January 2022 where there was any discussion about eliminating the manager position. And we heard the evidence, the record includes the defendant's response, was that we were getting rid of the manager position because we couldn't keep both positions, a director position and a manager position. But at the time they terminated Mr. Buechner, they hadn't hired a director. So they terminated Mr. Buechner as the manager when there was no director in place and not really any plans any time in the future where they would definitely have a director in place. So this was a targeted termination of Mr. Buechner. In terms of the race discrimination claim, there's the issue of the courts addressing the declaration that was made by Mr. Buechner, but there's so much more evidence in the record than just this declaration. The court said it wouldn't make any difference, there was not an issue with this declaration. But we have his EEO complaints that he filed internally. We have all the contemporaneous emails and records of his complaints about all of the incidents that he described in his declaration. And all of those efforts suggest that his race was a motivating factor. He was supervised by an African-American female, and in fact the consultant concluded that this person probably was not the best qualified person to be in this position. But she was allowed to supervise him, he detailed all the harassment he was subjected to, reprimands, write-ups, efforts to replace him. And then we have the false reasons for the termination that we've just described here, at least the inconsistent reasons. That's all we're required, I believe, to have this case proceed beyond summary judgment, at least on the FMLA retaliation claim, and on the race discrimination retaliation claim. And I believe there's sufficient evidence to support the claims of race discrimination as well. Make sure my colleagues don't have additional questions. Okay, thank you. Counsel. Mr. Doolin. Good morning, Your Honors. May it please the Court, I'm Frank Doolin, I'm here for the Appelese Howard University and at Venice Telecare. I'd like to start by addressing something that my friend, Mr. Branch, said that I think I should point out. The argument was that when Mr. Beecher was terminated, there was no director in place. That's incorrect. In fact, the department had been led by an interim director since early 2020. That was Roxanne Joseph. And Roxanne Joseph remained in place until the new director, the permanent director, was hired following Mr. Beecher's termination. That's undisputed in the record, Your Honors. The other issue I'd like to address at the top is there was a statement that the director had not been a nurse for at least 15 years. And that also is incorrect. I'd direct the Court to a statement of undisputed fact, number 14, Joint Appendix 283. And in fact, the cath lab had been directed by a registered nurse for at least 15 years. It was a requirement in the job description, a longstanding requirement that the cath lab be directed by a registered nurse. And there had also been a requirement, longstanding, that the manager, Mr. Beechner's position, also be a registered nurse. That requirement was removed to accommodate Mr. Beechner. When Adventist Healthcare came in to manage the hospital in early 2020, the nursing management was somewhat alarmed that Mr. Beechner was not a nurse and asked Ms. Joseph, the ICU director, to step in and direct the department on an interim basis. Ms. Joseph was a registered nurse and her job was to direct the department and specifically to supervise and evaluate the nurses. That arrangement was in place until Mr. Beechner was terminated. I'd like to move on then to the, well, the sixth motion. Pardon me. Mr. Beechner alleged that he was terminated because of his sex. That issue is governed by Iqbal and Twombly, and there were no allegations in the complaint other than the statement in the headings of Council 1 and 3 that there was sex discrimination. We submit that the district court was correct in dismissing that claim. As to the hostile work environment claims, also in Council 1 and 3, Mr. Beechner alleged a series of supervised reactions by Ms. Joseph, written reprimands, being told that he needed to listen to her, threats of termination, you better do as I say, you'd be in trouble if you don't follow my orders. She yelled at him on one occasion over the phone and he heard secondhand that she had offered his job to another man, David Burns. That's the conduct alleged by Ms. Joseph. He alleges that another manager, Maurice O'Shea, whose race is not specified, delayed the payment of a bonus. And then he alleges that he was terminated and that's part of the hostile work environment claim. We submit that the district court was correct in dismissing those claims. And we point the court to Ballack v. Kempthorne, which also involved, although it was on summary judgment, we think it's instructive as to the parameters of this sort of claim, where supervised reactions of this nature are not the basis for hostile work environment claim. And in Ballack, the court also noted that there were no comments based on race or other protected classifications. And that's the case here. There's no allegation that Ms. Joseph ever said anything relating to race or sex. Moving on to the summary judgment motion, we presented evidence that there were legitimate non-discriminatory and legitimate non-retaliatory reasons for all of the employment actions here. And those facts are undisputed. Mr. Buechner submitted a counter statement of disputed material facts, which were supported by a declaration that was not signed in accordance with Rule 56E1. And there was no explanation provided for that. Not even today, there was no explanation. And while the district court, under Rule 56, can correct, take action, issue an order to permit correction of a mistake on summary judgment, Mr. Buechner never asked for that opportunity, didn't file a motion to correct it before summary judgment was entered, or file a motion for reconsideration thereafter. And we submit that it's not the district court's job to take action about issue orders to correct the mistakes of counsel or the parties. Second, even if this declaration had been signed in compliance with the rules, it didn't actually generate any disputed issues of material fact. The counter statement only addressed 47 out of 149 facts. And as the court noted at Joint Appendix 426 in a footnote, these statements that were contained in this counter statement were just not responsive. They were either conclusory or non-sequiturs or otherwise unsupported. Based on that, the court held that, specifically noted that the declaration, even if it had been signed correctly, didn't generate any disputed issues. And that issue's been waived on appeal. It wasn't mentioned in the opening brief. And there were no factual determinations by the district court. There were no credibility determinations here, we submit. Moving on to the substance of the summary judgment decision, we presented legitimate and non-discriminatory reasons for the decision, the elimination of the position. And it's undisputed that, as to the timing, the decision was made in October of 2021, before Mr. Buechner requested FMLA leave. And I direct the court to statement of undisputed fact, number 87, which is a joint appendix 293, where we said, in October 2021, following discussions with Mr. Roche, Dr. Medley, the decision maker, concluded that Howard should eliminate the cath lab managers. In response, Mr. Buechner said, no dispute, that joint appendix 293. The timing is undisputed. There's no FMLA inference that this was somehow based on his request for FMLA leave a month later. And as for the reasons for the decision, there's statements in the briefs alleging that this was a trumped-up reason that somehow we were requiring Mr. Buechner to have a nursing license after years of not having a nursing license. That's incorrect. He was never required to have a nursing license. They made an accommodation for him back in 2019. And the reason for the decision was that Ms. Tuffy, who we've heard mentioned as a consultant, recommended that Ms. Joseph, the interim ICU director, who was serving an interim capacity, be replaced by somebody with real cardiovascular expertise who was a nurse. Dr. Medley agreed with that. And concluded that once that was done, it would be necessary to eliminate Mr. Buechner's position because, number one, Roxanne Joseph had been working for free as the interim manager. They would now need to pay a salary to an outside person being brought in as director. And number two, this director with cath lab experience would make Mr. Buechner unnecessary. He could do both jobs, director and manager. Those facts are undisputed. Mr. Buechner made some arguments about pretext, the lack of documentation. And this court has held a couple of times, Datta Yemi and Jackson v. Gonzalez, that the lack of documentation alone doesn't raise an inference of pretext. And second, again, it's undisputed that this decision was made in October. So even if there's a question as to timing, even if there was no documentation, there's no question as to timing. The decision was made in October, undisputed. There's also arguments about Mr. Perkins, who's allegedly a comparator, who was not terminated. And we submit that Mr. Perkins and Mr. Buechner are not similar. On summary judgment, the comparators have to be virtually identical. That's from the Burley case, and also mentioned just this past summer in Joyner. Comparators must be identical, virtually. And here, the comparators were completely dissimilar. Different ranks, different departments, they reported to different people. And more importantly, it's really, I think, a red herring to compare Mr. Perkins and Mr. Buechner because the hospital had no reason to eliminate Mr. Perkins' position. Neither one of them supervised nurses. Mr. Buechner's position was eliminated because they needed to bring in a new director, and that created the need to eliminate the manager position. Those facts just simply don't apply to Mr. Perkins. It's totally dissimilar. We also had a reference to Ms. Tuffy being surprised and there was a text message where she said, oh my, when she learned of the termination. And as we outlined in our brief, the district court excluded that document pursuant to Rule 37 because it had never been produced during discovery. We'd asked for it multiple times, and it was covered by our discovery requests. Mr. Buechner has not mentioned that issue in his briefs. We submit that issue as waived, and the text message should not be considered. Thank you, Your Honor. We would ask that you affirm the district court. Thank you. Mr. Branch, we'll give you one minute for a rebuttal. Yes, thank you, Your Honor. In terms of the decision to eliminate Mr. Buechner's position, counsel indicated that that decision was made in October 2021. That, in fact, is disputed. There's nothing in the communication in October 2021 that suggests that Mr. Buechner's position would be eliminated. Yes, there was possibility of some type of restructuring, but at the same time, the discussion centered around the fact that it was actually Mr. Buechner's manager who was not in the correct position or not qualified for the position or operating effectively in the position. It wasn't until January 2022, after Mr. Buechner had already started his FMLA leave, that we get the first email from Dr. Metley stating that we're going to have restructuring and we're going to consider eliminating Mr. Buechner's job. And it's not until March 18th that a decision is actually made to eliminate Mr. Buechner's job. Thank you. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan; Wilkins; Katsas